**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TORRA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-4079 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| GERRESHEIMER GLASS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Torra Johnson alleges that her former employer, Defendant Gerresheimer Glass Inc. ("Gerresheimer"), violated federal law and public policy when it terminated her. Before us is Gerresheimer's motion to dismiss Johnson's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* Defendant's Rule 12(b)(6) Motion to Dismiss First Amended Complaint ("Mot.") (Dkt. No. 17); Defendant's Memorandum of Law in Support of Its Rule 12(b)(6) Motion to Dismiss First Amended Complaint ("Mem.") (Dkt. No. 18).) Johnson opposes the motion. (*See* Plaintiff's Response in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint ("Opp'n") (Dkt. No. 21).) For the following reasons, we grant in part and deny in part Gerresheimer's motion to dismiss.

**FACTUAL BACKGROUND**

We take the following facts from the First Amended Complaint, "documents attached to the [First Amended Complaint], documents that are critical to the [First Amended Complaint] and referred to in it, [] information that is subject to proper judicial notice[,]" and any additional facts set forth in Johnson's opposition, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotation marks

omitted). We have accepted all well-pleaded factual allegations as true and drawn all reasonable inferences in Johnson's favor. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

On January 15, 2018, Johnson began working for Gerresheimer at its location in Chicago Heights, Illinois. (First Amended Complaint ("FAC") (Dkt. No. 15) ¶ 16.) She worked as an hourly-paid Selector whose duties included checking bottles. (*Id.* ¶ 17.) "[H]er duties did not involve providing services meant to address the COVID-19 pandemic or preventing the spread of COVID-19." (*Id.* ¶ 18.)

Sometime before May 15, 2020, Johnson began experiencing symptoms of the COVID-19 virus, including "chills, fever, dehydration, debilitating headaches, difficulty breathing, and loss of her senses of smell and taste." (*Id.* ¶¶ 20, 22.) These symptoms, which lasted for approximately three months, substantially limited Johnson's ability to breathe, talk, sleep, and walk. (*Id.* ¶¶ 23, 39; Opp'n at 7.) On May 15, Johnson underwent COVID-19 testing; two days later, her test came back positive for COVID-19 infection. (FAC ¶¶ 20, 21.) Johnson's doctor advised her to self-quarantine, and Johnson thereafter informed Gerresheimer that she would not be able to come to work because of her doctor's self-quarantine order. (*Id.* ¶¶ 24, 29, 70.) After Gerresheimer asked for further documentation of Johnson's COVID-19 diagnosis, Johnson's sister delivered Johnson's COVID-19 test results to Gerresheimer. (*Id.* ¶ 25.) Based on this information, Gerresheimer knew that Johnson had to self-quarantine for at least two weeks. (*Id.* ¶¶ 25, 32; Opp'n at 5.)

On June 9, Johnson provided Gerresheimer with documentation stating that she was approved to return to work. (FAC ¶ 34.) Gerresheimer, however, told Johnson that additional documentation was necessary before she could return to work. (*Id.* ¶¶ 24, 34.) Johnson and her

doctor made multiple attempts to send the additional documents to Gerresheimer, but Gerresheimer did not respond to any of these attempts. (*Id.* ¶ 35.) Due to Gerresheimer's failure to respond, Johnson asked the union's president about her work status. (*Id.* ¶ 36.) The union president told Johnson to contact the union's vice president. (*Id.*) On June 25, the union's vice president informed Johnson that she had been terminated. (*Id.* ¶ 37.) Gerresheimer did not compensate Johnson "for any of the time she was unable to work due to her COVID-19 diagnosis." (*Id.* ¶ 38.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, we accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiff[] [is] entitled to relief, the case enters discovery." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

## ANALYSIS

Johnson's First Amended Complaint pleads five counts against Gerresheimer. Count I alleges that Gerresheimer violated the Families First Coronavirus Response Act ("FFCRA") by

failing to provide Johnson with paid sick leave.  (FAC ¶¶ 41–48.)  Count II alleges that Gerresheimer violated the FFCRA by retaliating against Johnson for taking leave.  (*Id.* ¶¶ 49–53.)  Count III alleges that Gerresheimer violated the Americans with Disabilities Act ("ADA") by discriminating against Johnson on the basis of her disability.  (*Id.* ¶¶ 54–60.)  Count IV alleges that Gerresheimer violated the Family and Medical Leave Act ("FMLA") by interfering with Johnson's rights under the FMLA.  (*Id.* ¶¶ 57a–64.)[1]  And Count VI alleges that Johnson's termination was unlawful and violated public policy.  (*Id.* ¶¶ 65–72.)

Gerresheimer moves to dismiss each count with prejudice.  (Mem. at 10; Defendant's Reply Brief in Support of Its Rule 12(b)(6) Motion to Dismiss ("Reply") (Dkt. No. 22) at 8.)  Johnson contends that we should deny Gerresheimer's motion or, alternatively, allow her to file a Second Amended Complaint to cure any pleading deficiencies.  (Opp'n at 13.)

## I.      Gerresheimer's Motion to Dismiss

### A.      FFCRA Claims (Counts I and II)

In March 2020, Congress passed the FFCRA to address the COVID-19 pandemic.  *See* FFCRA, Pub. L. No. 116-127, 134 Stat. 178 (2020); *Kovacevic v. Am. Int'l Foods Inc.*, No. 1:21-cv-72, 2021 WL 3629756, at *2 (W.D. Mich. Aug. 17, 2021).  One division of the FFCRA, the Emergency Paid Sick Leave Act ("EPSLA"), was in effect from April through December 2020.  FFCRA, §§ 5108, 5109, 134 Stat. at 198; *Haddon v. Jesse Stutts, Inc.*, No. 5:20-cv-01830-HNJ, 2021 WL 3089232, at *2 (N.D. Ala. July 22, 2021).  Counts I and II allege violations of the EPSLA.

---

[1] Johnson's First Amended Complaint includes two paragraphs numbered 57, 58, 59, and 60. For these paragraphs, we refer to the second-numbered paragraph with an "a," e.g., "¶ 57a."

### 1.    Failure to Provide Paid Sick Time

In Count I, Johnson alleges that Gerresheimer violated the EPSLA by failing to provide her with paid sick leave when she took leave because she had "a self-quarantine order from a physician due to a positive COVID-19 test result."  (FAC ¶ 47; Opp'n at 3.)  Section 5102 of the EPSLA required an employer to provide paid sick time to an employee who was unable to work due to a need for leave in certain circumstances, including because she had "been advised by a health care provider to self-quarantine due to concerns related to COVID-19."  FFCRA, § 5102(a), 134 Stat. at 195–96.  The regulations in place at the relevant time required an employee to provide her employer with the following information before taking paid sick leave based on self-quarantine advice from a health care provider: the employee's name, dates for which leave was requested, the qualifying reason for leave, an oral or written statement that the employee was unable to work because of the qualified reason, and the name of the health care provider who advised the employee to self-quarantine.  29 C.F.R. §§ 826.20(a)(1)(ii), 826.100(a), (c) (eff. date Apr. 10, 2020 to Sept. 15, 2020); *see Colombe v. SGN, Inc.*, No. 5:20-CV-374-REW, 2021 WL 1198304, at *3–4 (E.D. Ky. Mar. 29, 2021) (explaining that an employee must provide documentation containing this information "[t]o trigger leave under the EPSLA" based on a health care provider's advice to self-quarantine).

The parties dispute whether Johnson must allege that she provided all this information to Gerresheimer to proceed with her unpaid sick time claim.  Relying primarily upon *Colombe*, a district court opinion, Gerresheimer contends that such allegations are necessary.  (Mem. at 3–4.)  Citing a different district court opinion, *Haddon*, Johnson argues otherwise.  (Opp'n at 4–5.)

To survive a motion to dismiss, the plaintiff "need only show that the complaint contains the *necessary* allegations to state a claim."  *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (emphasis added).  The question here is what allegations are necessary to state a claim

for unpaid sick time under § 5102 of the EPSLA. Neither party directs us to any binding Seventh Circuit precedent addressing this question, and our own research did not uncover any. This is not entirely surprising, considering that the EPSLA was only in effect from April through December 2020. *Haddon*, 2021 WL 3089232, at *2; *cf. Colombe*, 2021 WL 1198304, at *2 ("The FFCRA's recent enactment means there is scant caselaw interpreting the possible issues arising from the statute or the regulations.").

Nonetheless, we start our analysis by observing that "the Seventh Circuit has been clear that plaintiffs are not required to allege facts supporting every element of a claim." *Ponder v. Cnty. of Winnebago*, No. 3:20-cv-50041, 2021 WL 3269842, at *12 (N.D. Ill. July 30, 2021); *e.g.*, *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017); *Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019). "[I]t is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman*, 875 F.3d at 848. At the motion to dismiss stage, it is enough for the plaintiff "to plead a plausible claim, after which [the] plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* (quotation marks omitted). "A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Id.*; *see also Williams v. Dart*, 967 F.3d 625, 638–39 (7th Cir. 2020) ("Supporting each evidentiary element of a legal theory is for summary judgment or trial, not a test of the pleadings under Rule 12(b)(6) or 12(c)." (quotation marks omitted)).

We have also considered what is required to plead a minimum wage claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, because a violation of § 5102 also constitutes a failure "to pay minimum wages in violation of" § 206. *See* FFCRA, § 5105(a)(1), 134 Stat. at

197; *Haddon*, 2021 WL 3089232, at *5 (finding "case law discussing the pleading requirements for FLSA cases" persuasive in evaluating the standards for pleading an unpaid sick time claim under the EPSLA). "The required level of factual specificity [for a complaint] rises with the complexity of the claim," *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011), and minimum wage claims under the FLSA generally are not so complex "that they require significant factual allegations to present a story that holds together," *Sanchez v. Haltz Const., Inc.*, No. 09 C 7531, 2012 WL 13514, at *3 (N.D. Ill. Jan. 4, 2012) (quotation marks omitted); *see also Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *6 (N.D. Ill. Sept. 19, 2013) ("FLSA claims generally . . . are fairly straightforward and do not require plaintiffs to plead infinitesimal details to render them plausible or provide defendants with fair notice of the claims against them."). To plead a minimum wage claim under 29 U.S.C. § 206, a plaintiff need not "plead specific dates and times that [she] worked undercompensated hours"; she only needs to "provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was unpaid." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 965–66 (7th Cir. 2019). Applying *Hirst* to the analogous paid sick time claim under § 5102 suggests that a plaintiff needs to only plead facts from which we can plausibly infer that there was at least one workweek where the plaintiff took sick leave and was not paid.

In view of these pleading standards, we conclude that Johnson's allegations plausibly suggest that Gerresheimer violated § 5102. Johnson alleges that on May 17, 2020, she received a positive COVID-19 test. (FAC ¶ 21.) Johnson's doctor advised her to self-quarantine, and Johnson notified Gerresheimer that she would need to stay home because of this advice. (*Id.* ¶¶ 24, 29, 70.) Johnson's sister also delivered Johnson's COVID-19 test results to Gerresheimer. (*Id.* ¶ 25.) Then, on June 9, Johnson provided Gerresheimer with documentation stating that she

could return to work. (*Id.* ¶ 34.) Finally, Gerresheimer has not compensated Johnson for any of the time she was unable to work due to her COVID-19 diagnosis. (*Id.* ¶ 38.) Drawing all reasonable inferences in Johnson's favor, these allegations indicate that Johnson's doctor advised her to self-quarantine because of concerns related to COVID-19, which is a reason that requires an employer to pay sick time under § 5102(a); that Johnson did not go to work for approximately three weeks because of her doctor's advice; and that Johnson was entitled to, but did not receive, paid sick time for this time period. They also suggest that Johnson notified Gerresheimer about her doctor's self-quarantine advice and the reason for the advice (her COVID-19 diagnosis) around the time she stopped going into work. True, Johnson does not specifically allege that this notice included every item of information required by the relevant regulations. But we do not believe Johnson was required to do so, even if she must ultimately prove that she provided this information to prevail on her claim. *Chapman*, 875 F.3d at 848; *Lopez v. Brake Parts Inc.*, No. 19 C 50262, 2020 WL 2128722, at *2 (N.D. Ill. May 5, 2020) ("While a plaintiff eventually must prove the elements of his claim, he does not need to plead them."). Johnson's allegation that she notified Gerresheimer of her COVID-19 diagnosis and her doctor's advice before she took leave is sufficient for now; Johnson can disclose whether she provided any other information with this notice later in the litigation. *See Williams*, 967 F.3d at 638–39; *Chapman*, 875 F.3d at 848. As such, we deny Gerresheimer's motion to dismiss Count I.

## 2. Retaliation

Count II alleges that Johnson took leave in accordance with the EPSLA and that Gerresheimer retaliated against her for taking this leave. (FAC ¶¶ 51, 53.) Section 5104 of the EPSLA made it unlawful for an "employer to discharge, discipline, or in any other manner discriminate against any employee who" engaged in certain activity, including "tak[ing] leave in accordance with this Act." FFCRA, § 5104, 134 Stat. at 196–97.

As with Johnson's sick time claim, the parties do not direct us to any Seventh Circuit caselaw addressing what is necessary to plead a retaliation claim under § 5104. Even so, the plain language of § 5104 requires an employee to perform a certain activity—here, "tak[ing] leave in accordance with" the EPSLA—to recover for retaliation. *See Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 609–11 (7th Cir. 2020) (looking to a statute's language to determine whether the plaintiff had stated a cause of action under the statute). In addition, employers who willfully violated § 5104 were considered to have violated 29 U.S.C. § 215(a)(3) as well. FFCRA, § 5105(b), 134 Stat. at 197. To sufficiently plead a retaliation claim under § 215(a)(3), a plaintiff must plausibly allege, among other things, that she "engaged in activity protected under the" FLSA. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018); *see also Mackie v. Coconut Joe's IOP LLC*, No. 2:20-cv-02562-DCN, 2021 WL 4993538, at *8 (D.S.C. Oct. 27, 2021) (applying "the same framework for analyzing retaliation claims under the FLSA to [an EPSLA] retaliation claim"). Accordingly, Johnson must plausibly allege that she took leave in accordance with the EPSLA to state a claim for retaliation under § 5104.

The First Amended Complaint passes muster under this standard. Johnson alleges that she notified Gerresheimer that she tested positive for COVID-19; that she would need to stay home because of her doctor's advice to self-quarantine; and that approximately three weeks later, she provided Gerresheimer with documentation stating that she could return to work. (FAC ¶¶ 24, 25, 34.) From these allegations, we can reasonably infer that Johnson notified Gerresheimer of a qualified reason for taking leave and then stayed home from work for a few weeks because of that reason. This is enough to make it plausible that Johnson took leave while complying with the EPSLA's notice requirements.

Gerresheimer's arguments to the contrary are unconvincing.  Gerresheimer contends that Johnson "does not allege that she took leave under the FFCRA, but specifically alleges that she was denied such leave."  (Mem. at 5.)  Gerresheimer, however, does not point to any portion of the First Amended Complaint where Johnson purportedly alleges that she was denied leave.  (*See id.* at 4–5; Reply at 4–5); *see Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 510 (7th Cir. 2020) ("[I]t is not the role of the court to search the record to find support for a party's assertion.").  Although Johnson alleges that Gerresheimer did not pay her for the time she did not work or provide her with paid sick leave for this time period (*e.g.*, FAC ¶¶ 38, 47), these allegations do not undermine the plausibility that Johnson took leave in accordance with the EPSLA in the first place; they only show that Gerresheimer did not pay Johnson for the leave that she took.  This failure might be relevant if § 5104 required a plaintiff to take *paid* leave before asserting a retaliation claim, and it appears that Gerresheimer makes that argument in its reply.  (*See* Reply at 4 ("The only basis upon which Plaintiff can assert a retaliation claim under the FFCRA is to prove that she actually took paid leave under the EPSLA[.]").)  But this argument is untethered from the language of § 5104, which does not require an employee to take "paid" leave.  *See* FFCRA, § 5104, 134 Stat. at 196–97.

Moreover, to the extent Gerresheimer's argument for dismissal depends on its contention that Johnson must specifically allege that she provided each item of information required by the relevant regulations before taking leave, we reject this argument for the same reasons we rejected Gerresheimer's sick time argument.  Even if Johnson must ultimately establish that she provided Gerresheimer with certain information to prove that she took leave in accordance with the EPSLA, we do not read Seventh Circuit caselaw as requiring Johnson to allege that she provided each specific item of this information in the First Amended Complaint.  At this stage of the

litigation, Johnson needs to only plead factual allegations that make it plausible that she took leave in accordance with the EPSLA. As already discussed, she has met this standard. We deny Gerresheimer's motion to dismiss Count II as well.

### B. ADA Discrimination (Count III)

Johnson contends that her COVID-19 symptoms were an actual disability under the ADA because they substantially limited her ability to perform one or more major life activities. (*See* Opp'n at 6–7.) In Count III, she alleges that by refusing to reasonably accommodate her disability and terminating her employment because of her disability, Gerresheimer "intentionally discriminated against [Johnson] on the basis of her disability" and "retaliated against [her] because of her disability and/or her request for reasonable accommodation due to her disability." (FAC ¶¶ 55, 56.)

As an initial matter, although these allegations refer to both discrimination and retaliation,[2] we consider only whether Count III states a claim for disability discrimination. We do so for two reasons. First, a party waives a previously asserted claim by failing to include it in the most recent complaint. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016); *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). Johnson pled a stand-alone retaliation claim under the ADA in her original Complaint (*see* Complaint (Dkt. No. 1) ¶¶ 48–56 (Count IV)), but she omitted such a claim from her First Amended Complaint, thereby waiving any retaliation claim based on the ADA. Second, "a party generally forfeits an argument or issue not raised in response to a motion to dismiss." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). Despite Gerresheimer's characterization of Count III as a discrimination claim

---

[2] The ADA prohibits both types of conduct, but they give rise to distinct claims that have different elements. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600–02 (7th Cir. 2011); *Landry v. Abbott Lab'ys*, No. 17 CV 8499, 2020 WL 1848209, at *11 (N.D. Ill. Apr. 13, 2020).

(*see* Mem. at 5–7), Johnson does not challenge this characterization or otherwise argue that Count III encompasses both discrimination and retaliation claims (*see* Opp'n at 6–8). Therefore, for purposes of Gerresheimer's motion to dismiss Count III, the only issue is whether the First Amended Complaint states a disability discrimination claim.

"The ADA prohibits an employer from discriminating against a qualified person on the basis of disability." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 789 (7th Cir. 2019) (citing 42 U.S.C. § 12112(a)). To state a discrimination claim under the ADA, a plaintiff must "allege facts showing that (1) [s]he is disabled; (2) [s]he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quotation marks omitted). An individual is "actually disabled" under the ADA if she has "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1); *Gallardo v. Chi. Transit Auth.*, No. 15 cv 7458, 2018 WL 4699754, at *7 (N.D. Ill. Sept. 29, 2018).

Gerresheimer does not challenge Johnson's assertion that her COVID-19 symptoms constituted an actual disability; it contends that even if Johnson was disabled, she "cannot sustain a disability discrimination claim under the ADA" because she does not allege that Gerresheimer was aware of her disability, i.e., her COVID-19 symptoms. (Mem. at 5–7; Reply at 5.) Johnson, for her part, does not dispute that this allegation is missing from the First Amended Complaint. (*See* Opp'n at 6–8.) Instead, she contends that "had [Gerresheimer] welcomed [her] back to work rather than discharging her, [her] disability would have been readily apparent." (*Id.* at 7.)

We agree with Gerresheimer. A plaintiff "must plead sufficient facts supporting an inference that the [defendant] discriminated against [her] 'on the basis of disability.'" *Roberts v.*

*City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (quoting 42 U.S.C. § 12112(a)). Even if we assume that Johnson's COVID-19 symptoms rendered her disabled, for us to reasonably infer that Gerresheimer terminated Johnson based on this disability, Gerresheimer had to know about Johnson's symptoms when it terminated her. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). If Gerresheimer did not know of Johnson's alleged disability when it terminated her, Johnson's termination must have been based on some other reason. *See Hedberg*, 47 F.3d at 932.

The First Amended Complaint does not contain any allegations from which we can reasonably infer that Gerresheimer knew that Johnson was experiencing COVID-19 symptoms (chills, fever, dehydration, and so on) when it terminated her in June 2020. Although the First Amended Complaint alleges that Gerresheimer knew that Johnson had tested positive for COVID-19 in May 2020 (FAC ¶¶ 21, 24, 25), Johnson does not argue that this knowledge alone would have alerted Gerresheimer as to the debilitating symptoms she was allegedly suffering (*see* Opp'n at 6–8). Nor do we find such an inference reasonable given that "[t]he severity of COVID-19 symptoms can range from very mild to severe," and "[s]ome people may have no symptoms at all."[3] *Coronavirus disease 2019 (COVID-19) – Symptoms and causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last visited Jan. 11, 2022). Because Johnson has not plausibly alleged that Gerresheimer terminated her on the basis of her alleged disability, we grant Gerresheimer's motion to dismiss Count III.

---

[3] We take judicial notice of these facts because we deem them to be beyond reasonable dispute. *See* Fed. R. Evid. 201(b); *see also Am.'s Kids, LLC v. Zurich Am. Ins. Co.*, No. 20 C 3520, 2021 WL 4477872, at *3 (N.D. Ill. Sept. 30, 2021) (judicially noticing "the fact that COVID-19 can be cleaned from surfaces" because it was well-known and confirmed by reliable sources).

### C.      FMLA Interference (Count IV)

Count IV alleges that Gerresheimer interfered with Johnson's rights under the FMLA "[b]y failing to request further information from [her] and/or her healthcare provider(s) as necessary to confirm" Johnson's entitlement to FMLA leave.  (FAC ¶¶ 59, 60.)  "The FMLA generally provides eligible employees suffering from a serious medical condition with as many as twelve weeks of unpaid leave during any twelve-month period."  *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012).  "Employers are prohibited from [] interfering with . . . an employee's use or attempted use of FMLA leave."  *Id.*  To succeed on an FMLA interference claim, a plaintiff must establish that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled."  *Id.* at 627 (quotation marks omitted).

At issue here is the notice requirement, which the parties agree must be pled to state an FMLA interference claim.  (*See* Mem. at 7; Opp'n at 8.)  This requirement is "not onerous"; it is satisfied when an employee provides "information sufficient to show that [s]he *likely* has an FMLA-qualifying condition."  *Burnett v. LFW Inc.*, 472 F.3d 471, 478–79 (7th Cir. 2006) (emphasis in original).  Stated differently, "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave."  *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004).  "Once an employee informs [her] employer of [her] probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave."  *Burnett*, 472 F.3d at 480.  Ultimately, the adequacy of an employee's notice "is a fact-rich question" that "perhaps best resolved by the trier of fact[.]"  *Id.* at 479 n.4.

14

According to the First Amended Complaint, Johnson notified Gerresheimer that she tested positive for COVID-19 and would not be able to come to work because her doctor told her to self-quarantine.  (FAC ¶¶ 24, 25.)  Johnson contends that this notice is sufficient because it provided Gerresheimer "with enough information to determine that she qualified for leave under the FMLA."  (Opp'n at 9.)  Gerresheimer disagrees.  It argues that we must dismiss Count IV because Johnson does not allege that she provided notice of her desire to take *FMLA* leave. (Mem. at 7.)  Gerresheimer also argues that Johnson's notice was insufficient because she did not inform Gerresheimer that she was experiencing any COVID-19 symptoms.  (*Id.* at 7–8.) Because "COVID-19 symptoms greatly vary in severity and duration, and a majority of infections are asymptomatic[,]" Gerresheimer continues, notice of a COVID-19 diagnosis alone "was not sufficient to infer that [Johnson] required FMLA leave."  (Reply at 6.)

Gerresheimer's arguments are not persuasive.  An employee does not need to "expressly mention the FMLA in [her] leave request or otherwise invoke any of its provisions" to satisfy the notice requirement.  *Burnett*, 472 F.3d at 478.  In fact, an employee does not even "need to be aware of [her] FMLA rights to invoke them."  *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020).  So Johnson's failure to allege that she notified Gerresheimer of a desire to take leave under the FMLA does not sink her FMLA interference claim.

Nor does Johnson's failure to notify Gerresheimer of her COVID-19 symptoms require us to dismiss this claim.  Although Johnson's COVID-19 diagnosis alone did not tell Gerresheimer whether, and to what extent, she was experiencing symptoms, Johnson was not obligated to provide Gerresheimer with information conclusively demonstrating that she required FMLA leave; her notice only needed to establish a *probable* basis for FMLA leave by alerting Gerresheimer "to the seriousness of the health condition."  *See Stevenson v. Hyre Elec. Co.*, 505

F.3d 720, 725 (7th Cir. 2007); *Aubuchon*, 359 F.3d at 953. If Johnson's notice established this probable basis, it was then Gerresheimer's duty "to conduct further investigation and inquiry to determine whether the proposed leave *in fact* qualifies as FMLA leave." *Burnett*, 472 F.3d at 480 (emphasis added).

By informing Gerresheimer that she had COVID-19 and was required to self-quarantine, Johnson plausibly notified Gerresheimer that she had a condition that *might* entitle her to FMLA leave. *See COVID-19 and the Family and Medical Leave Act Questions and Answers*, U.S. Dep't of Labor, https://www.dol.gov/agencies/whd/fmla/pandemic (explaining that COVID-19 may be a "serious health condition" in some cases and that an employee who is sick "with COVID-19 may be entitled to leave under the FMLA under certain circumstances") (last visited Jan. 11, 2022). Indeed, by May 2020, when Johnson notified Gerresheimer of her COVID-19 diagnosis, the seriousness of being infected with COVID-19 was readily apparent. It was known that "COVID-19 is a highly contagious virus that can be spread even by asymptomatic carriers." *United States v. Minor*, No. 18-CR-80152, 2020 WL 4333524, at *2 (S.D. Fla. Apr. 17, 2020). It was also known that the virus had already contributed to hundreds of thousands of deaths in only a matter of months. *See, e.g.*, *United States v. Lebrecht*, No. 1:16-CR-00166 EAW, 2020 WL 2519721, at *1 n.1 (W.D.N.Y. May 18, 2020) (noting 310,391 confirmed COVID-19 deaths worldwide as of May 18, 2020); *United States v. Ortiz*, No. 1:18-CR-00134, 2020 WL 1904478, at *2 (M.D. Pa. Apr. 17, 2020) (noting that the first reported cases of COVID-19 occurred in late 2019 and that as of April 17, 2020, the World Health Organization had reported 139,515 confirmed COVID-19 deaths worldwide and 28,221 COVID-19 deaths in the United States). And there was "no cure, vaccine, or effective treatment for COVID-19" at the time. *Ill. Republican Party v. Pritzker*, 470 F. Supp. 3d 813, 818 (N.D. Ill. 2020). By simply informing

16

Gerresheimer that she had a highly contagious, incurable, and deadly virus that required her to self-quarantine, Johnson plausibly alerted Gerresheimer about a condition that likely supported FMLA leave. Once she did this, it was then Gerresheimer's duty to investigate further to determine whether Johnson's COVID-19 infection would, in the circumstances at hand, justify FMLA leave.

Because Johnson's First Amended Complaint sufficiently alleges that she satisfied the notice requirement of an FMLA interference claim, we deny Gerresheimer's motion to dismiss Count IV.

### D.    Unlawful Termination in Violation of Public Policy (Count V)

Count V alleges that Gerresheimer discharged Johnson from her employment because she took time off to self-quarantine after receiving a positive COVID-19 test and that this discharge violated a clear mandate of Illinois's public policy. (FAC ¶¶ 66–68.) Gerresheimer characterizes this count as a claim for retaliatory discharge under Illinois law. (Mem. at 8.) Johnson does not dispute this characterization (*see* Opp'n at 9–12), so we likewise treat Count V as a claim for retaliatory discharge under Illinois law.

"In Illinois, a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500, 911 N.E.2d 369, 374 (2009) (quotation marks omitted). Nonetheless, because "an employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy," Illinois courts have recognized a "limited and narrow exception to the general rule that employees are at-will" in the form of "a cause of action for retaliatory discharge." *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 22, 135 N.E.3d 891, 896. To prevail on a claim for retaliatory discharge, a plaintiff must prove three elements: "that she was (1) discharged; (2) in retaliation for her activities; and (3) that the

17

discharge violates a clear mandate of public policy." *Blount v. Stroud*, 232 Ill. 2d 302, 314, 904 N.E.2d 1, 9 (2009) (quotation marks omitted).

Gerresheimer argues that we must dismiss Count V because Johnson's First Amended Complaint does not identify a recognized public policy of Illinois. (*See* Mem. at 8.) Johnson does not dispute that she must allege a recognized public policy, but she maintains that she identified a "clearly mandated" and vital public policy that "was widely known at the time of her termination—federal and state action directed at stopping the spread of a deadly and contagious [] virus." (Opp'n at 9–10.) Specifically, Illinois had a "clear mandate of public policy" that required "individuals diagnosed with COVID-19 to self-quarantine to avoid the spread of the virus during a time of pandemic." (FAC ¶¶ 68, 69.) As set forth in the First Amended Complaint and Johnson's opposition,[4] this public policy was reflected in the FFCRA; Governor Pritzker's April 1, 2020 Executive Order (Executive Order 2020-18), April 30, 2020 Executive Order (Executive Order 2020-32), and May 29, 2020 Disaster Proclamation;[5] and the Centers for Disease Control and Prevention's ("CDC's") recommended guidelines at the time. (FAC ¶¶ 26, 27, 30; Opp'n at 10–12.)

Public policy "concerns what is right and just and what affects the citizens of the State collectively." *Turner*, 233 Ill. 2d at 500, 911 N.E.2d at 374 (quotation marks omitted). To support a retaliatory discharge claim, the public policy at issue "must strike at the heart of a citizen's social rights, duties, and responsibilities." *Id.* at 500–01, 911 N.E.2d at 374 (quotation

---

[4] We consider factual assertions in Johnson's opposition so long as they are consistent with the First Amended Complaint. *Phillips*, 714 F.3d at 1019–20; *Help At Home, Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("A plaintiff need not put all of the essential facts in the complaint; he may add them by . . . brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." (quotation marks omitted)).

[5] Johnson erroneously refers to the date of this proclamation as March 29, 2020. (Opp'n at 11.)

marks omitted). Generalized expressions of public policy, however, are insufficient, as they "fail to provide essential notice to employers." *Id.* at 503, 911 N.E.2d at 375. Accordingly, an employee must identify "a 'specific' expression of public policy" to have a claim for retaliatory discharge. *Id.*, 911 N.E.2d at 375–76.

Johnson plausibly alleges a clear mandate of Illinois's public policy. A policy requiring individuals infected with COVID-19 to self-quarantine to help prevent the spread of the virus undoubtedly "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Id.* at 500–01, 911 N.E.2d at 374 (quotation marks omitted); *see Brown v. Biomat USA, Inc.*, No. 20-cv-05437, 2021 WL 3187599, at *4 (N.D. Ill. July 28, 2021) (finding it "difficult to imagine rules that strike more directly 'at the heart of a citizen's social rights, duties, and responsibilities'" than Illinois's COVID-19 safety protocols). This alleged public policy is also sufficiently specific: it mandates a specific action (self-quarantining) in a specific situation (a COVID-19 diagnosis). Thus, the alleged policy is not, as Gerresheimer argues, simply "to contain the spread of COVID-19," nor is it, as Gerresheimer also contends, analogous to the general concept of "patient safety" in a hospital setting, which the Illinois Supreme Court in *Turner* found insufficient to support a retaliatory discharge claim. (Mem. at 10 (citing *Turner*, 233 Ill. 2d at 507–08, 911 N.E.2d at 378).)

Gerresheimer's other arguments do not justify dismissal either. Gerresheimer contends that it could not have violated any public policy because it was an "essential business" whose employees were not subject to Illinois's stay-at-home directives. (*Id.* at 9–10.) In March and April 2020, Governor Pritzker issued executive orders that generally directed all individuals living in Illinois to stay at home. Executive Order 2020-10 § 1, ¶ 1 (Mar. 20, 2020); Executive Order 2020-18 (Apr. 1, 2020) (extending Executive Order 2020-10 through April 30, 2020);

Executive Order 2020-32 § 2, ¶ 1 (Apr. 30, 2020).[6]  Excluded from these directives, however, were individuals who left their homes to work at essential businesses.  Executive Order 2020-10 § 1, ¶ 5(d); Executive Order 2020-32 § 2, ¶ 5(iv).  Gerresheimer claims that it was an essential business because it manufactured, distributed, and supplied essential products and services for critical industries.  (Mem. at 9); *see* Executive Order 2020-10 § 1, ¶ 12(t); Executive Order 2020-32 § 2, ¶ 12(t).

The problem with Gerresheimer's contention is that it is not supported by any materials that we can consider at the Rule 12(b)(6) stage.  Although a party opposing a Rule 12(b)(6) motion can use its opposition to make factual assertions to help defeat the motion, *see, e.g.*, *Help At Home*, 260 F.3d at 752–53, the party moving for dismissal under Rule 12(b)(6) "can base its motion on *only* the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (emphasis added) (quotation marks omitted).  Gerresheimer does not cite to any of these categories of information to support its contention that it was an "essential business" exempted from Governor Pritzker's executive orders, so we decline to find that this contention renders Johnson's retaliatory discharge claim implausible at the Rule 12(b)(6) stage.  If Gerresheimer wants to argue that it did not violate any public policy reflected in Governor Pritzker's orders because it was exempt from these orders, it will have to wait until later in the litigation to do so.

Gerresheimer also argues that the FFCRA cannot provide the basis for the public policy underlying Johnson's retaliatory discharge claim because (1) the statute provides adequate

---

[6] All executive orders cited in this Opinion were accessed at https://www.illinois.gov/government/executive-orders.html on January 11, 2022.

remedies for alleged misconduct and (2) Gerresheimer was a "health care provider" that was exempt from the FFCRA's paid leave requirements. (*See* Mem. at 9–10; Reply at 7–8.) But even if we were to accept these arguments, we see nothing at this stage of the litigation that precludes Governor Pritzker's executive orders from providing the basis for the public policy at issue. *See Biomat USA*, 2021 WL 3187599, at *1, *3–5 (concluding, at the Rule 12(b)(6) stage, that Executive Order 2020-10 established a clearly mandated public policy). Nor does Gerresheimer argue that the CDC's guidelines at the time are insufficient to provide the requisite clear mandate of public policy. (*See* Mem. at 9–10; Reply at 6–8.) Thus, even if the FFCRA cannot provide the basis for the alleged public policy, dismissal is not warranted because other sources identified by Johnson may provide this basis. *Cf. Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587, 589 (7th Cir. 2021) (where the plaintiff alleged three independent bases for holding the defendant vicariously liable, it was only necessary for the plaintiff to state a plausible claim for relief under one of the three bases).

Johnson has plausibly alleged a clearly mandated public policy to support her retaliatory discharge claim, so we deny Gerresheimer's motion to dismiss Count V.

## II.     Johnson's Request for Leave to Amend

Because we are granting Gerresheimer's motion to dismiss with respect to Count III, we also consider Johnson's request for "leave to file a Second Amended Complaint to include additional allegations" in the event that we grant Gerresheimer's motion as to any claim. (Opp'n at 12.) A district court must allow a plaintiff to amend her complaint "unless there is a good reason . . . for denying leave to amend." *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019) (quotation marks omitted). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

We grant Johnson's request. This is the first time we have dismissed Johnson's ADA discrimination claim, and we are still in the early stages of the lawsuit. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) ("[A]pplying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."). And although Gerresheimer asks for dismissal with prejudice, it does not identify a good reason for denying Johnson's request for leave to amend. (*See generally* Reply.) We therefore permit Johnson to file a Second Amended Complaint that amends or supplements the allegations underlying her ADA discrimination claim if she can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11.

**CONCLUSION**

For the foregoing reasons, we grant in part and deny in part Gerresheimer's motion to dismiss Johnson's First Amended Complaint (Dkt. No. 17). We grant Gerresheimer's motion to dismiss Count III but deny the motion as to Counts I, II, IV, and V. Johnson may file a Second Amended Complaint that amends or supplements the allegations underlying Count III if she can do so in accordance with this Opinion and Rule 11. If Johnson files a Second Amended Complaint, she shall do so within 21 days of this Opinion. If Johnson decides to proceed on her First Amended Complaint instead, she should notify the Court of that decision within 21 days of this Opinion. In either case, Gerresheimer shall have 21 days thereafter to answer or otherwise respond to the operative complaint. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: January 12, 2022